UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| W LYNN FRAZIER, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. C-10-3 |
| | § | |
| WIRELINE SOLUTIONS, LLC, | § | |
| | § | |
| Defendant. | § | |

**ORDER**

On this day came on to be considered Magnum Oil International, LLC's Motion to Intervene. (D.E. 22.) For the reasons stated herein, the Motion to Intervene is DENIED.

**I.      Jurisdiction**

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1338(a) (exclusive jurisdiction over patent cases).

**II.     Factual and Procedural Background**

On January 5, 2010, Plaintiff W. Lynn Frazier filed this patent infringement action under 35 U.S.C. § 271 against Defendant Wireline Solutions, LLC. ("Defendant") (D.E. 1.) The relevant patent, U.S. Patent No. 6,796,376 ("'376 patent"), was issued to Plaintiff Frazier on September 28, 2004. The invention relates to a composite bridge plug system, utilized in oil well drilling. (D.E. 1 at 2.)

On April 15, 2010, Magnum Oil Tools International, LLC ("Magnum" or "Movant") filed its Motion to Intervene, seeking permissive intervention in this action pursuant to Federal Rule of Civil Procedure 24(b). (D.E. 20, 22.) Magnum states that under its Patent License Agreement (the "License Agreement") with Frazier, it is the

1 / 13

exclusive licensee of the '376 patent. Magnum seeks to prosecute its claims against Defendant for the same infringing conduct that Plaintiff has alleged. (D.E. 26; D.E. 32.) Defendant opposes the Motion to Intervene. (D.E. 30; D.E. 33.)

## III.   Discussion

### A.   Standing

The primary dispute between the parties relates to whether Movant has standing to intervene in this action. Movant argues that it has standing because it is the "exclusive licensee" of the '376 patent. (D.E. 26 at 1, 7-8.) Defendant argues that Movant is not an "exclusive licensee," as it lacks the ability to bring a suit for patent infringement under the terms of the License Agreement. (D.E. 30 at 7-13.) Defendant states that without this "right to exclude" others from making, using, or selling a patented invention, Movant lacks standing to intervene in this action. (D.E. 30 at 8.) The dispute turns largely on the interpretation of the License Agreement, most particularly Section 9, which provides:

> LICENSOR **[Frazier] shall have the sole and exclusive right, in its discretion, to institute and prosecute lawsuits against third persons for infringement of the rights licensed in this Agreement**. All sums recovered in any such lawsuits, whether by judgment, settlement or otherwise, in excess of the amount of reasonable attorneys' fees and other out of pocket expenses of such suit, shall be retained solely by the LICENSOR.

(D.E. 26-1 § 9A (emphasis added).) Before turning to permissive intervention considerations under Rule 24(b)(1)(B), the Court addresses Movant's standing to intervene.[1]

---

[1] In Ruiz v. Estelle, the Fifth Circuit held that "Article III does not require intervenors to independently possess standing where the intervention is into a subsisting and continuing Article III case or controversy and the ultimate relief sought by the intervenors is also being sought by at least one subsisting party with standing to do so." 161 F.3d 814, 830 (5th Cir. 1998). The Federal Circuit has, however, required that a patent licensee have standing to intervene. Ortho Pharma. Corp. v. Genetics Institute, Inc., 52 F.3d 1026, 1031 (Fed. Cir. 1995) ("A licensee must have 'standing' under the patent statute. A holder of . . . a nonexclusive license suffers no legal injury from infringement and, thus, has no standing to bring suit or

### 1.     General Principles

Standing in a patent infringement case is derived from the Patent Act, which provides: "[a] patentee shall have remedy by civil action for infringement of his patent." 35 U.S.C. § 281. The term "patentee" includes "not only the patentee to whom the patent was issued but also the successors in title to the patentee." 35 U.S.C. § 100(d).  It is well established that "economic injury alone does not provide standing to sue under the patent statute." Ortho Pharma. Corp. v. Genetics Institute, Inc., 52 F.3d 1026, 1031 (Fed. Cir. 1995).  Rather, "it is the licensee's beneficial ownership of a right to prevent others from making, using or selling the patented technology that provides the foundation for co-plaintiff standing . . . ."  52 F.3d at 1032.

Plaintiffs in patent suits fall into three categories for standing purposes: "[1] those that can sue in their own name alone; [2] those that can sue as long as the patent owner is joined in the suit; and [3] those that cannot even participate as a party to an infringement suit." Morrow v. Microsoft Corp., 499 F.3d 1332, 1339 (Fed. Cir. 2007).  "In the first category . . . are those plaintiffs that hold all legal rights to the patent, including assignees and those to whom 'all substantial rights to the patent' have been transferred. Exclusive licensees who do not receive all substantial rights fall into the second category and must join the patent owner as co-plaintiff to satisfy prudential concerns (i.e., to avoid the possibility that the accused infringer could later be sued by the patentee also).  Finally, the third category (those who cannot be parties at all) includes those who lack exclusionary rights, i.e., those licensees who are authorized to make, use, and sell the patented product but who **have no right to prevent others from also doing so**." Aspex

---

even join in a suit with the patentee."). The Federal Circuit has exclusive appellate jurisdiction over patent cases.  28 U.S.C. § 1295(a)(1).

Eyewear, Inc. v. Altair Eyewear, Inc., 288 Fed. App. 697, 704-05 (Fed. Cir. 2008) (citing Morrow, 499 F.3d at 1340-41) (emphasis added).

As the Federal Circuit has explained, "[a] grant of all substantial rights in a patent amounts to an assignment – that is, a transfer of title in the patent – which confers constitutional standing on the assignee to sue another for patent infringement in its own name. Conversely, **a nonexclusive license or "bare" license** – a covenant by the patent owner not to sue the licensee for making, using, or selling the patented invention and under which the patent owner reserves the right to grant similar licenses to other entities – **confers no constitutional standing on the licensee under the Patent Act to bring suit or even to join a suit with the patentee because a nonexclusive (or 'bare') licensee suffers no legal injury from infringement**." Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc., 248 F.3d 1333, 1345 (Fed. Cir. 2001) (internal citations omitted; emphasis added); see Imation Corp. v. Koninklijke Philips Elecs. N.V., 586 F.3d 980, 988 (Fed. Cir. 2009) (citing Intellectual Prop. Dev.); Ortho Pharma. Corp., 52 F.3d at 1031 ("A holder of such a nonexclusive license suffers no legal injury from infringement and, thus, has no standing to bring suit or even join in a suit with the patentee."); see also Schreiber Foods, Inc. v. Beatrice Cheese, Inc., 402 F.3d 1198, 1202-03 (Fed. Cir. 2005) ("[N]on-exclusive licensees do not have constitutional standing to sue.").

### 2. Application of Standing Principles

In light of the principles discussed above, Movant's standing to sue and thus its ability to intervene depends in large part on whether it is an exclusive or non-exclusive licensee, and more particularly whether it has the right to prevent others from using and

selling the patented product. Movant argues that it is in the second category described in Morrow and Aspex, above, as it is an exclusive licensee with less than all substantial rights. (D.E. 32 at 1.) Defendant in contrast argues that Movant is in the third category, a licensee that lacks standing to sue or intervene. (D.E. 30 at 7.)

Magnum's status is resolved by looking at the License Agreement itself. While the License Agreement uses the term "exclusive," this is not dispositive. Ortho Pharma. Corp., 52 F.3d at 1032; Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A., 944 F.2d 870, 875 (Fed. Cir. 1991) ("[T]he use of the term 'exclusive license' in the 1988 agreements is not dispositive; what the documents in fact recite is dispositive.").[2] Rather, the Court must examine the terms of the License Agreement to determine which rights it grants to Movant. The Agreement grants Movant the right to "**use and sell** the systems and methods embodying the invention(s) described in the Patents, for the life of the Patents, in the Licensed Territory [United States and internationally]." (D.E. 26-1 § 1 (emphasis added).)

The License Agreement, however, denies Magnum certain important rights, necessarily leading to the conclusion that Magnum is a non-exclusive licensee. For example, Magnum does not have the right to grant sublicenses under the License Agreement, a relevant indication of exclusivity. (D.E. 26-1 § 1.C.) See Evident Corp. v. Church & Dwight Co., Inc., 399 F.3d 1310, 1313-14 (Fed. Cir. 2005) (finding that licensee was an "exclusive licensee" in part because it had the right to grant sublicense). Most importantly, the License Agreement does not grant Movant the "right to prevent

---

[2] Also not dispositive is the fact that no other entities have been issued a license with respect to the '376 patent. Rite-Hite Corp. v. Kelley Co., Inc., 56 F.3d 1538, 1553 (Fed. Cir. 1995) ("The grant of a bare license to sell an invention in a specified territory, **even if it is the only license granted by the patentee**, does not provide standing without the grant of a right to exclude others.") (emphasis added).

others from making, using, or selling the patented technology." 52 F.3d at 1032.  Rather, Section 9 clearly provides that Frazier, as licensor, "**shall have the sole and exclusive right, in its discretion, to institute and prosecute lawsuits against third persons for infringement of the rights licensed in this Agreement**.  All sums recovered in any such lawsuits, whether by judgment, settlement or otherwise, in excess of the amount of reasonable attorneys' fees and other out of pocket expenses of such suit, shall be retained solely by the LICENSOR." (D.E. 26-1 § 9A (emphasis added).)   Notably, Section 9.B of the License Agreement provides that Magnum, as licensee, "agrees to fully cooperate with Licensor in the prosecution of any such suit against a third party and shall execute all papers, testify on all matters, and otherwise cooperate in every way necessary and desirable for the prosecution of any such lawsuit." (D.E. 26-1 § 9.B.)  Although Movant contends that Section 9.B "implies that the parties contemplated Magnum's participation in litigation," (D.E. 32 at 7), this section, when read in context with Section 9.A, contemplates Magnum's indirect involvement in litigation not as a party, but essentially as a witness.  Sections 9.A and 9.B together indicate that Magnum has no power to bring an action against an infringer and rather must defer to Frazier.  While Magnum must be involved with the lawsuit "in every way necessary and desirable," it may not participate as a co-plaintiff.[3]

As stated above, "it is the licensee's beneficial ownership of a **right to prevent others from making, using or selling the patented technology that provides the foundation for co-plaintiff standing**." 52 F.3d at 1032 (emphasis added).  The "right to

---

[3] Contrary to Movant's argument, this basic reading of the Section 9.A of the License Agreement does not lead to an "absurd" result. (D.E. 26 at 9-10.)  As the cases cited in this Order demonstrate, licensees often lack standing when they are not provided the right to sue for infringement, and it would indeed be illogical for the Court to interpret the License Agreement so as to allow Magnum to join in this infringement lawsuit, notwithstanding Frazier's "sole and exclusive right" to bring and prosecute such a suit.

sue is the means by which the patentee exercises the right to exclude others from making, using, and selling the claimed invention." Sicom, 427 F.3d at 979.[4] The Federal Circuit has clearly explained that "without granting [licensee] **the right to enforce the patent**, either explicitly or impliedly, the document conveys no more than a bare license." Fieldturf, Inc. v. Southwest Recreational Indus., Inc., 357 F.3d 1266, 1269 (Fed. Cir. 2004). A "bare license," in turn, does not provide a licensee standing to intervene in a patent infringement lawsuit. Intellectual Prop. Dev., 248 F.3d at 1345 ("A nonexclusive license or 'bare' license . . . confers no constitutional standing on the licensee under the Patent Act to bring suit or even to join a suit with the patentee because a nonexclusive (or 'bare') licensee suffers no legal injury from infringement.") (internal citations omitted).[5] Magnum clearly lacks the "right to prevent" or "right to sue" under the terms of the License Agreement, and thus does not have an exclusive license. Rather, it has a non-exclusive license only to use and sell the devices, which the Federal Circuit has likened to a "covenant not to sue" from licensor to licensee. TransCore, LP v. Elec. Transaction Consultants Corp., 563 F.3d 1271, 1275 (5th Cir. 2009).[6]

The Federal Circuit's decision in Rite-Hite Corp. v. Kelley Co., Inc., 56 F.3d 1538, 1553 (Fed. Cir. 1995) is closely on point. In that case, plaintiff Rite-Hite Corp.

---

[4] Although Movant contends that the right to exclude is distinct from the right to sue (D.E. 32 at 6), it offers no explanation as to how a licensee can enforce its patent rights without a right to sue. Federal Circuit precedent does not support Movant's argument.

[5] Movant cites the 1891 Supreme Court decision in Waterman v. MacKenzie, 138 U.S. 252, 255 (1891) for the position that it has an exclusive licensee. (D.E. 32 at 4.) This case interprets the 1870 Patent Act, not the 1952 Patent Act. 138 U.S. at 255. Presently, the Patent Act provides that patents "shall contain . . . the right to exclude others from making, using, offering for sale, or selling the invention throughout the United States or importing the invention into the United States . . . ." 35 U.S.C. § 154(a)(1). The Court properly relies upon recent case law interpreting the current version of the Patent Act.

[6] Although Frazier states in his affidavit that he consents to Magnum's intervention, (D.E. 26-2 at 2) this cannot change the plain meaning of the License Agreement. See Ortho Pharma., 52 F.3d at 1032 ("[C]o-plaintiff standing is determined by whether or not the licensee acquired proprietary rights in the patent under the contract with the patentee. The patentee's later second thoughts are irrelevant, either to confer standing or . . . deny standing."). The "discretion" granted to licensor in the agreement refers to whether to "institute and prosecute lawsuits," not to allow the licensee to intervene.

distributed its patented products through its own wholly-owned and operated sales corporations as well as several independent sales organizations ("ISOs"). Rite-Hite sued defendant Kelley Corp. for infringement. Soon after the action was filed, several ISOs sought to intervene as co-plaintiffs, claiming they were "exclusive licensees" of the patent at issue. The district court found that the ISOs were exclusive licensees and permitted them to intervene. 56 F.3d at 1542. After trial, Defendant appealed, claiming inter alia that the district court erred in allowing the ISOs to intervene. Id. at 1543. The Federal Circuit reversed the district court's decision, concluding that the ISOs lacked standing to intervene. The court explained:

> [T]he ISOs had no right under the agreements to exclude anyone from making, using, or selling the claimed invention. The ISOs could not exclude from their respective territories other ISOs, third parties, or even Rite-Hite itself. . . . Rite-Hite had no obligation to file infringement suits at the request of an ISO and the ISOs had no right to share in any recovery from litigation. . . .
>
> The ISOs were not licensees under the patent, except perhaps as non-exclusive licensees by implication. They were not granted any right to exclude others under the patent. They do not accordingly "share" with the patentee the property rights represented by the patent so as to have standing to sue as a co-plaintiff with the patentee.
>
> . . .
>
> The grant of a bare license to sell an invention in a specified territory, even if it is the only license granted by the patentee, does not provide standing without the grant of a right to exclude others. The ISOs . . . are not proper parties to this suit, and their claims must be dismissed.

56 F.3d at 1553-54. The License Agreement at issue here is quite similar to that in Rite-Hite. Frazier, as licensor, retains the "sole and exclusive right, in its discretion" to bring infringement suits, and has the right to "all sums recovered in any such lawsuits." (D.E. 26-1 § 9A (emphasis added).) The License Agreement's failure to provide Movant with

any right to sue for infringement, or to recover any damages, necessarily leads to the conclusion that Movant has only a non-exclusive license, and thus no standing to sue.[7] Without standing to bring an infringement action, Movant has no basis on which to intervene, and its Motion for permissive intervention must be denied.

Even apart from Movant's lack of standing, which in itself is fatal to its Motion to Intervene, considerations under Federal Rule of Civil Procedure 24(b) also warrant denying the Motion, as discussed below.

### B. General Principles of Permissive Intervention

Federal Rule of Civil Procedure 24(b)(1)(B) provides, "[o]n timely motion, the court may permit anyone to intervene who: (B) has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Rule 24(b)(3) states, "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Permissive intervention pursuant to Rule 24(b)(1) is appropriate when: "(1) timely application is made by the intervenor, (2) the intervenor's claim or defense and the main action have a question of law or fact in common, and (3) intervention will not unduly delay or prejudice the adjudication of the rights of the original parties." Farouk Sys., Inc. v. Costco Wholesale Corp., 2010 WL 1576690, at *3 (S.D. Tex. Apr. 20, 2010). "Permissive intervention is within a court's discretion." Newby v. Enron Corp., 443 F.3d 416, 424 (5th Cir. 2006). The Rule 24(b)(1)(B) factors weigh heavily against intervention in this case.

---

[7] The Court recognizes that the right to receive damages for infringement is not "so substantial" as to affect exclusivity on its own. Vaupel, 922 F.2d at 875. Nevertheless, the retention of damages combined with the right to bring suit does lead to the conclusion that Magnum's license is not "exclusive."

### 1.     Motion is Not Timely and Would Prejudice Existing Parties

Despite Plaintiffs' contentions to the contrary, its Motion to Intervene is not timely.  The Fifth Circuit in <u>Stallworth v. Monsanto Co.</u>, 558 F.2d 257, 264 (5th Cir. 1977) identified the following four factors relevant to a timeliness determination: (1) "[t]he length of time during which the would-be intervenor actually know[s] or reasonably should have known of his interest in the case before he petitioned for leave to intervene," (2) "[t]he extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest in the case," (3) "[t]he extent of the prejudice that the would-be intervenor may suffer if his petition for leave to intervene is denied," and (4) "[t]he existence of unusual circumstances militating either for or against a determination that the application is timely."  558 F.2d at 264-66.

This action was filed on January 5, 2010, but the Motion to Intervene was not filed until April 19, 2010, even though Movant acknowledges that it has "known about its interest in the case since the day on which the lawsuit was initiated."  (D.E. 26 at 3.)  In fact, Magnum knew about its interest even earlier, as demonstrated by a November 6, 2009 cease and desist letter from counsel for Frazier and Magnum to Defendant, alleging that they had "recently become aware" that Defendant was violating the '376 patent.  (D.E. 1-2 at 1.)  Practically speaking, Magnum has known about its interest as long as Frazier himself has known, as Frazier and his wife are Magnum's sole owners.  (D.E. 26 at 5.)  Although Movant characterizes the amount of time that has passed in this case as "minimal and inconsequential," (D.E. 26 at 3) this is an inaccurate characterization.  This case is proceeding pursuant to a one year Scheduling Order, and several deadlines have

already passed, including the deadline to disclose asserted claims and preliminary infringement contentions (February 26, 2010), the deadline to add new patents and/or claims for patents-in-suit (February 26, 2010), the deadline to serve preliminary invalidity contentions and make document production (March 26, 2010), and the deadline to exchange proposed terms and claim elements needing construction (April 6, 2010). (D.E. 11.)  The deadline for joinder of parties was scheduled for the same day (April 15, 2010) that Movant filed its Motion to Intervene. (D.E. 11.)  Movant should have sought to intervene far earlier, and fails to provide any explanation for its delay in light of the fact that it knew about its interest at least since November 2009.

Allowing this delayed intervention would prejudice the existing parties, most notably Defendant, who would have limited time to prepare a defense against Magnum if it were allowed to intervene at this late stage.  In contrast, it is unclear how Magnum would be prejudiced by not being allowed to intervene, as the License Agreement with Frazier does not allow Magnum to recover damages. (D.E. 26-1 § 9.1(A).)  No "unusual circumstances" relevant to the timeliness determination are present in this action.  If anything, the fact that Movant is owned by Frazier and has the same counsel strongly indicates that the Motion to Intervene should have been filed much earlier in this litigation.  Application of the <u>Stallworth</u> factors therefore leads to the conclusion that this Motion to Intervene is untimely, and intervention should be denied on this basis as well.

### 2. The Second and Third Factors also Weigh Against Intervention

In addition to being untimely, Movant also lacks a common "claim or defense" in this case to the extent that it lacks standing to bring an infringement claim, as discussed above.  Further, as has also been discussed above, in light of the significant period of

time that has passed in this litigation and the new issues that an intervention may raise, it is clear that the existing parties to this litigation, most notably Defendant, would be prejudiced by allowing Magnum to intervene at this stage of the proceedings.

In sum, all three factors under Federal Rule of Civil Procedure 24(b) weigh against allowing Movant to intervene in this action. As such, these factors also support the Court's conclusion that the Motion to Intervene (D.E. 22) must be denied.

### 3.     Intervention as Counter-Defendant

As an alternative, Movant argues that it has standing to intervene as a counter-defendant, as it has a counterclaim defense in common with Plaintiff. Specifically, Movant points to Defendant's counterclaim for attorney's fees and costs under 35 U.S.C. § 285, and argues that it is required under Section 11.A of License Agreement to indemnify the licensor. (D.E. 26 at 11.) Movant further argues that it should be allowed to intervene because it has a vested economic interest in the enforceability of the '376 patent, and thus seeks to defend against the Defendant's affirmative defense that the '376 patent is invalid. (D.E. 26 at 12.)

The Court finds Movant's counter-defendant argument unpersuasive and declines to allow intervention on this basis. Section 11.A of the License Agreement, upon which Movant relies, provides that the licensee agrees to "defend, indemnify, and hold Licensor . . . harmless against all costs, expenses, and losses (including reasonable attorneys' fees and costs) incurred through the claims of third parties against [Plaintiff] based on the manufacture or sale of the Licensed Products including, but not limited to, actions founded on product liability." (D.E. 26 at 11; D.E. 26-1 § 11.A.) With respect to the claim for attorney's fees, Section 285 allows for such fees only in "exceptional cases,"

which generally has been defined as "misconduct during litigation, vexatious or unjustified litigation, and frivolous suit." Hoffman-La Roche Inc. v. Invamed Inc., 213 F.3d 1359, 1365 (Fed. Cir. 2000); see also Wedgetail Ltd. v. Huddleston Deluxe, Inc., 576 F.3d 1302, 1304-05 (Fed. Cir. 2009). A claim for attorney's fees thus would not relate to a claim "based on the manufacture or sale of the Licensed Products," but rather the conduct of the infringement litigation itself; as such, there would be no duty to indemnify under Section 11.A of the License Agreement.

The Court fails to see how Movant's alternate argument is anything more than a reformulation of its earlier claim of standing based upon economic injury. The law is clear that "economic injury" alone is insufficient to give rise to standing in an infringement case. Ortho Pharma. Corp., 52 F.3d at 1031. Movant cannot be allowed to intervene solely on the basis of economic injury as a counter-defendant when it would not be allowed to do so as a co-plaintiff. To hold otherwise would essentially negate the patent standing rules discussed above. The Court must reject Movant's request to intervene as a counter-defendant in this action.

In sum, Movant's attempt to intervene as a counter-defendant must be denied.

## IV. Conclusion

For the reasons stated above, the Court DENIES Magnum's Motion to Intervene in this action. (D.E. 22.)

SIGNED and ORDERED this 10th day of June, 2010.

_____
Janis Graham Jack
United States District Judge